**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
INGEVITY CORPORATION,

|  |  |  |
|---|---|---|
| | **Plaintiff,** | **REPORT AND** |
| | | **RECOMMENDATION** |
| | -against- | **22-CV-565 (NGG) (RLM)** |

**REGENT TEK INDUSTRIES, INC.,**

                                                  **Defendant.**
----------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

Plaintiff Ingevity Corporation ("plaintiff" or "Ingevity") brings this diversity action against defendant Regent Tek Industries, Inc. ("defendant" or "Regent Tek"), seeking to enforce a judgment rendered against defendant by a South Carolina state court.[1]  See generally Complaint (Jan. 31, 2022) ("Compl."), DE #1; see Pl. Mot. ¶¶ 7-9.  Currently pending before this Court, on a referral from the Honorable Nicholas G. Garaufis, is plaintiff's motion for default judgment.  See generally Pl. Mot.; Affidavit of Dennis M. Rothman in [S]upport [of Motion for Default Judgment] (July 8, 2022) ("7/8/22 Rothman Decl."), DE #9-4; Order Referring Motion (July 11, 2022) ("Referral Order").  Plaintiff requests enforcement of the state court judgment, as well as an award of prejudgment interest,[2] attorneys' fees, and costs.

---

[1] While the Complaint sets forth two other causes of action (i.e., "account stated" and "breach of contract/unjust enrichment"), plaintiff only seeks default judgment against defendant with respect to the third count—"action on South Carolina judgment."  See [Plaintiff's] Motion for Default Judgment (July 8, 2022) ("Pl. Mot.") ¶¶ 6-8, Electronic Case Filing ("ECF") Docket Entry ("DE") #9.

[2] As discussed *infra*, plaintiff seeks interest accruing after the entry of judgment in the South Carolina state court but before any entry of judgment in this federal action.

See Pl. Mot. ¶ 8.  For the reasons that follow, this Court respectfully recommends that

plaintiff's motion be granted to the extent described in this Report and Recommendation.

## **BACKGROUND**

Plaintiff Ingevity is a chemical manufacturer headquartered in North Charleston, South

Carolina.  See Compl. ¶ 3.  Defendant Regent Tek is a thermoplastic road-marking

manufacturer,[3] with its principal place of business located in Shirley, New York.[4]  See id. ¶¶

4-5.  In 2019, Regent Tek completed nine separate purchase orders for two of Ingevity's

chemical products—the 5101P Resin and 5206P Resin.  See id. ¶ 8; Compl., Exhibit A –

[D]efendant's purchase orders to plaintiff (docketed on Jan. 31, 2022) ("Purchase Orders") at

2-8, DE #1-1; Compl., Exhibit D – [P]laintiff's judgment against defendant in South Carolina

state court (docketed on Jan. 31, 2022) ("South Carolina Judgment") ¶ 9, DE #1-4.  Ingevity

timely supplied Regent Tek with these products in the quantities ordered, and issued nine

corresponding invoices for payment.  See Compl. ¶¶ 9-10; Compl., Exhibit B – [P]laintiff's

invoices to defendant (docketed on Jan. 31, 2022) ("Invoices") at 2-9, DE #1-2; South

Carolina Judgment ¶ 9, DE #1-4.  Regent Tek paid one of these invoices but failed to satisfy

the other eight; accordingly, Regent Tek owes an outstanding purchase balance of $304,480

(i.e., $38,060 per invoice).  See Compl. ¶¶ 9-10; Invoices at 2-9, DE #1-2; South Carolina

Judgment ¶¶ 9-10, DE #1-4.

---

[3] According to the New York Department of State, Division of Corporations, Regent Tek remains an active entity.  See Request for Certificate of Default, Exhibit A - NY Department of State information on defendant (docketed on Mar. 4, 2022) ("NY DOS Defendant Information") at 1, DE #7-2.

[4] Shirley, New York is located in the Eastern District of New York.  (As Shirley is located in Suffolk County, this action should have been filed in the Central Islip courthouse.)

Each of these invoices at issue incorporates by reference Ingevity's terms and conditions of sale (the "Terms and Conditions").  <u>See, e.g.</u>, Invoices at 2, DE #1-2 ("The sale of the goods and services described herein is subject to the written agreement between Ingevity and the buyer, or, in the absence of written agreement, Ingevity's standard terms and conditions of sale in effect on the date of shipment.").  The Terms and Conditions include, *inter alia*, a provision stating that "if Ingevity commences an action to collect amounts due, the customer will pay interest at the lesser of one and one-half percent per month or the maximum rate permitted by law and all costs, including Ingevity's attorneys' fees."  Compl. ¶¶ 11-12; <u>see</u> Compl., Exhibit C – [P]laintiff's terms and conditions of sale (docketed on Jan. 31, 2022) ("Terms and Conditions") ¶ 6, DE #1-3.  The Terms and Conditions further provide that any disputes arising out of the underlying purchase order will be governed by South Carolina law, "without regard to its conflict of laws provisions."  Terms and Conditions ¶ 13, DE #1-3; <u>see</u> Compl. ¶ 13.  Regent Tek made no objections to Ingevity's invoices (or the Terms and Conditions), and agreed to pay the sums owed.  <u>See</u> Compl. ¶¶ 14-15.  To date, Regent Tek has not paid the outstanding eight invoices, despite written acknowledgment by Helen Torkos, Regent Tek's President, that the company owes the amount demanded.  <u>See</u> <u>id.</u> ¶¶ 15-17.

On February 25, 2021, Ingevity commenced an action, in the Court of Common Pleas, Ninth Judicial Circuit, Charleston County, South Carolina (Case No. 2021-CP-00924), for damages against Regent Tek for breach of contract by non-payment.  <u>See</u> <u>id.</u> ¶ 25.  Regent Tek was properly served with the summons and state court complaint but failed to answer or otherwise appear in the South Carolina action.  <u>See</u> <u>id.</u> ¶ 26; South Carolina Judgment ¶¶ 1-3, DE #1-4.  Thereafter, the state court granted an entry of default against Regent Tek.  <u>See</u>

South Carolina Judgment ¶ 4, DE #1-4.  On August 23, 2021, the state court held a hearing by video conference, during which Ingevity presented evidence and testimony of its damages; Regent Tek, however, failed to appear, despite due notice of the proceeding.  See id. at ECF p. 1 & ¶ 6.  On August 24, 2021, in light of Regent Tek's failure to appear, Ingevity obtained a judgment by default against Regent Tek "in the total amount of $369,244.38 (the South Carolina Judgment), consisting of Ingevity's actual damages of $304,480; pre-judgment interest at 8.75% per annum of $52,262.04; attorneys' fees of $12,191.94; and costs of $310.40."  Compl. ¶ 27; see South Carolina Judgment ¶¶ 10-13, DE #1-4.

On January 31, 2022, plaintiff commenced the instant federal action, seeking to enforce the South Carolina Judgment.  See generally Compl.  Defendant was timely served with process, via the New York Secretary of State, on February 2, 2022, see Summons Returned Executed (docketed on Feb. 10, 2022) at 1, DE #6, but failed to answer or otherwise respond. Following defendant's failure to respond to the Complaint, plaintiff requested that a Certificate of Default be entered against defendant, see Request for Certificate of Default (Mar. 4, 2022), DE #7, and the Clerk of the Court noted the default, see Clerk's Entry of Default (Mar. 11, 2022), DE #8.

Thereafter, on July 8, 2022, plaintiff moved for default judgment against defendant, pursuant to Rule 55 of the Federal Rules of Civil Procedure (the "FRCP").  See Pl. Mot. at 1. According to its motion papers, plaintiff seeks the following relief: enforcement of the South Carolina Judgment in the amount of $369,244.38; the interest accrued on the South Carolina Judgment since it was entered on September 7, 2021, at South Carolina's then-applicable rate of interest (7.25 percent per annum), until the date of judgment in this Court; attorneys' fees

4

incurred in this action (initially calculated in the amount of $9,090); and costs and disbursements incurred in this action in the amount of $477.  See Pl. Mot. ¶¶ 7-9.  On July 11, 2022, Judge Garaufis referred the pending motion for default judgment to the undersigned magistrate judge for preparation of a report and recommendation.  See Referral Order.

On July 25, 2022, having reviewed plaintiff's motion papers, this Court ordered plaintiff to supplement its submissions to provide contemporaneous time records to supports its request for attorneys' fees.  See generally Order re [ ] Motion for Default Judgment (July 25, 2022), DE #10.  The Court also instructed defendant to show cause, in writing, by August 26, 2022, why the relief requested by plaintiff should not be granted; defendant was warned that its failure to timely respond would likely result in a judgment being entered against it.  See id. Defendant nevertheless failed to respond.

On August 4, 2022, plaintiff supplemented its submissions in connection with its request for attorneys' fees, including plaintiff's counsel's supplemental declaration and time entries.  See generally [Supplemental] Declaration [of Dennis M. Rothman] (docketed on Aug. 4, 2022) ("8/4/22 Rothman Decl."), DE #13; 8/4/22 Rothman Decl., Exhibit A -- [R]edacted time entries (docketed on Aug. 4, 2022) ("Time Entries"), DE #13-1.[5]

Finally, on September 12, 2022, plaintiff submitted an updated request for interest accruing on the South Carolina Judgment after its entry in the state court.  See Letter *advising court defendant has not responded to the July 25, 2022 order and updating the interest computation* (Sept. 12, 2022) ("9/12/22 Letter") at 1, DE #14.

---

[5] Plaintiff's counsel also filed a sealed copy of his supplemental declaration, as well as an unredacted version of his time entries, which appear on the docket in this case as DE #12 and DE #12-1, respectively.

## DISCUSSION

**I.    Default Judgment Standard**

A defendant's "default is deemed to constitute a concession of all well pleaded allegations of liability[.]"  Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) (citations omitted).  Nevertheless, "before a district court enters a default judgment, it must determine whether the allegations in a complaint establish the defendant's liability as a matter of law."  Taizhou Zhongneng Imp. & Exp. Co., Ltd. v. Koutsobinas, 509 F.App'x 54, 56 (2d Cir. 2013) (citing Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)); see TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd., 536 F.App'x 45, 46 (2d Cir. 2013) (quotation marks and citation omitted).

"When deciding [the defendant's liability on] a motion for default judgment, courts have . . . looked to recent precedent with regard to surviving a Rule 12(b)(6) motion to dismiss[.]"  Chanel, Inc. v. Jean-Louis, No. 06-cv-5924 (ARR)(JO), 2009 WL 4639674, at *3 (E.D.N.Y. Dec. 7, 2009) (citation omitted).  On a Rule 12(b)(6) motion, courts follow a two-prong approach.  See Ashcroft v. Iqbal, 556 U.S. 662, 677-80 (2009).  First, the complaint's conclusions of law and formulaic recitations of elements of a cause of action should be disregarded.  See id.  Second, where the complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.

While courts assume the truth of the pleadings' well-pleaded facts as they relate to liability, the facts alleged in a pleading are not assumed to be true in assessing the plaintiff's right to the relief requested, see Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir.

1981), which must "be established by the plaintiff" with evidence, <u>Greyhound Exhibitgroup</u>,

973 F.2d at 158 (citations omitted).  In this regard, the court may rely on "detailed affidavits

and documentary evidence[,]" and need not conduct an evidentiary hearing on the

appropriateness of the relief requested.  <u>Fustok v. ContiCommodity Servs., Inc.</u>, 873 F.2d 38,

39-40 (2d Cir. 1989).

## II.    <u>Federal Jurisdiction and Venue</u>

### A.    **Subject Matter Jurisdiction**

Plaintiff alleges that this Court has subject matter jurisdiction over its claims pursuant

to 28 U.S.C. §§ 1332(a)(1) and (c)(1).  <u>See</u> Compl. ¶ 6.  Section 1332 provides that a district

court "shall have original jurisdiction of all civil actions where the matter in controversy

exceeds the sum or value of $75,000, exclusive of interest and costs" and is between

"[c]itizens of different States[.]"  28 U.S.C. § 1332(a).  Here, there is complete diversity

between plaintiff (a citizen of South Carolina) and defendant (a citizen of New York), <u>see</u>

Compl. ¶¶ 3-4, and the amount in controversy exceeds $75,000.00, <u>see id.</u> ¶ 6 & *ad damnum*

clause (demanding $304,480 in principal damages, exclusive of interest, attorneys' fees, and

costs); <u>see also</u> 28 U.S.C. § 1332.  The matter is therefore properly before this Court.

### B.    **Personal Jurisdiction**

The Court also has personal jurisdiction over defendant.  In the default judgment

context, a court has discretion to consider *sua sponte* whether it has personal jurisdiction over

a defaulting party.  <u>See</u> <u>City of N.Y. v. Mickalis Pawn Shop, LLC</u>, 645 F.3d 114, 133 (2d

Cir. 2011) ("[B]efore a court grants a motion for default judgment, it *may* first assure itself

that it has personal jurisdiction over the defendant." (first alteration in original) (emphasis

7

added) (citation omitted)).  "Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived."  Id. (quoting Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703 (1982)).  Nevertheless, the Court briefly addresses the matter of personal jurisdiction in this federal diversity action.

"A district court sitting in a diversity action, such as the case at bar, may exercise personal jurisdiction to the same extent as the courts of general jurisdiction of the state in which it sits."  Sabatino v. St. Barnabas Med. Ctr., No. 03CV7445(CSH), 2005 WL 2298181, at *1 (S.D.N.Y. Sept. 20, 2005) (citing, inter alia, Fed. R. Civ. P. 4(k)(1)(A)).  "New York State has general jurisdiction over corporations formed under its laws and operating within the state."  Arch Specialty Ins. Co. v. M. Lopez Contracting Corp., 19-CV-07024 (EK) (PK), 2021 WL 7830147, at *3 (E.D.N.Y. Mar. 10, 2021) (citation omitted).  Regent Tek is a New York corporation and, therefore, this Court may exercise personal jurisdiction over it.

## C.    Venue

Finally, venue is proper in the Eastern District of New York.  By federal statute, venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(3).  As discussed above, defendant, based in Shirley, New York, is subject to this Court's personal jurisdiction.  In any event, having failed to answer or appear in this matter, defendant has waived any objections with respect to venue.  See Alonso v. New Day Top Trading, Inc., 18 Civ. 4745 (PAE) (DCF), 2021 WL 4691320, at *1 n.3 (S.D.N.Y. Oct. 7, 2021) (concluding that defendant waived objection to venue by failing to appear); see also MD Produce Corp. v. 231 Food

Corp., 304 F.R.D. 107, 108 (E.D.N.Y. 2014) ("[T]he Court finds that [defendants] have waived th[e] defense [of improper venue] by their default."). Accordingly, this dispute is properly before this Court.

## III.    Service of Process in the Federal Action

"A default judgment is ordinarily justified where a defendant fails to respond to the complaint." SEC v. Anticevic, No. 05 CV 6991(KMW), 2009 WL 4250508, at *2 (S.D.N.Y. Nov. 30, 2009) (citing, *inter alia*, Bermudez v. Reid, 733 F.2d 18, 21 (2d Cir. 1984)). Before entering a default judgment, however, the Court should confirm that defendant was duly served and notified of the lawsuit. See LG Capital Funding, LLC v. Volt Solar Sys., Inc., 15 Civ. 1404 (KAM) (VMS), 2016 WL 11447845, at *4 (E.D.N.Y. Aug. 15, 2016), adopted, 2016 WL 4718014 (E.D.N.Y. Sept. 9, 2016).

"The proper method of serving process in a diversity case is determined by federal law." Love v. Kwitney, No. CV–90–3687 (RJD), 1991 WL 180369, at *1 (E.D.N.Y. July 10, 1991) (citation omitted); see Hanna v. Plumer, 380 U.S. 460, 463-64 (1965). Rule 4 of the FRCP, which governs service of process, permits service of a corporation in a manner authorized by the law of the forum state or the state in which service is made. See Fed. R. Civ. P. 4(h)(1)(A) (incorporating service methods prescribed in Fed. R. Civ. P. 4(e)(1)). In this case, New York is both the forum state and the state in which service was effected, and New York law provides for service of process on a corporation through New York's Secretary of State. See N.Y. Bus. Corp. Law § 306(b)(1). Plaintiff served defendant (a corporation) with the summons and Complaint through the New York Secretary of State. See Summons Returned Executed at 1, DE #6 (averring that Regent Tek was served by "personally serving

two copies of the [summons and Complaint] at the [O]ffice of the Department of State, located

in the City of Albany, New York by delivering to and leaving the papers with Sue Zouky[,]

. . . being an authorized person in the Corporation Division of the Department of State and

empowered to receive such service."). Thus, plaintiff properly served and notified defendant

of this federal action.

## IV.    Compliance with Local Civil Rule 55.2(c)

Local Civil Rule 55.2(c) requires that "all papers submitted to the Court pursuant to

Local Civil Rule [55.2(b)] shall simultaneously be mailed to the party against whom a default

judgment is sought at the last known residence of such party (if an individual) or the last

known business address of such party (if a person other than an individual). Proof of such

mailing shall be filed with the Court." S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(c). Service of

the motion on a non-appearing defendant is an important notice requirement designed for the

protection of such a defendant. See Transatlantic Auto Grp., Inc. v. Unitrans-Pra Co., No. 08

CV 5070(DLI), 2011 WL 4543877, at *20 (E.D.N.Y. Sept. 9, 2011) (noting that, to promote

fairness and efficiency, the Local Rules relating to default provide greater protection for non-

appearing defendants than do the FRCP), adopted, 2011 WL 4543838 (E.D.N.Y. Sept. 29,

2011). Here, plaintiff has submitted a declaration of mailing, in which plaintiff's counsel avers

that a copy of plaintiff's motion for default judgment was simultaneously mailed to defendant

at 202 Mastic Boulevard East, Shirley, New York 11967—i.e., defendant's last known

business address (and the address registered with the New York Secretary of State)—on July 8,

2022. See 7/8/22 Rothman Decl. (Declaration Of Mailing) at ECF p. 5, DE #9-4; NY DOS

Defendant Information at 1, DE #7-2 (confirming last registered business address).  Plaintiff has therefore complied with Local Civil Rule 55.2(c).

**V.**    **Enforcement of the State Court Judgment**

**A.**    **Mechanism for Enforcement**

Plaintiff requests that this Court enforce a default judgment that was entered against defendant in a South Carolina state court.  See Pl. Mot. ¶¶ 7-8.  "Since 1948, federal courts have been directed by 28 U.S.C. § 1738 to accord state court judgments full faith and credit." Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela, 863 F.3d 96, 122 (2d Cir. 2017) (citing Pub. L. No. 80-773, 62 Stat. 869, 947 (1948)).  "Section 1738 does not, however, provide guidance as to how state court judgments may be enforced in federal court[,]" and "[a]ctions to enforce state court judgments in federal court are rare."  Id. (citation omitted).  Generally, to enforce a state court judgment, the party seeking enforcement must file a civil action in a federal court having independent jurisdiction to hear the claim.  See id. (discussing "established procedures for enforcing state court judgments in federal court"); accord Caruso v. Perlow, 440 F.Supp.2d 117, 119 (D. Conn. 2006) ("the holder of a state-court judgment seeking to have it enforced in federal court must fall back upon the traditional, if rather cumbersome, strategy of bringing a civil action on the state-court judgment by invoking, for example, the diversity jurisdiction of the federal court"); Cont'l Cas. Co. v. Argentine Republic, 893 F.Supp.2d 747, 753 (E.D. Va. 2012) ("[T]he proper treatment of a state court judgment by a federal court is not recognition, or registration, but enforcement. It is axiomatic that 'the proper form of action on a judgment of a sister state is [an action to collect a] debt or its statutory equivalent,' because 'it is only by an action on such a judgment that it

11

can be enforced in another jurisdiction, since a judgment, as such, has no extraterritorial force or effect.'" (citations omitted)).

Here, plaintiff has properly filed a civil action against defendant in this Court, and the Complaint's third claim—"Action On a South Carolina Judgment"—can be reasonably construed as a request for enforcement of the state court's judgment. See Compl. ¶ 28 ("Ingevity is entitled to the entry of judgment against [Regent Tek] in this Court on the South Carolina Judgment, so that it may be *enforced* in the state of New York[.]" (emphasis added)); see, e.g., Berke v. Northcutt, 798 F.2d 468, 468 (6th Cir. 1986) (concluding that the "complaint in this case can be fairly construed as requesting enforcement of the state court's decision[,]" as plaintiff alleged that "he has a judgment and that defendant has failed to pay on the judgment"). Critically, as noted above, this Court has independent jurisdiction over the matter by virtue of diversity jurisdiction. See *supra* Section II.A. Thus, the Court may hear plaintiff's claim for enforcement.

## B.    Two-Step Inquiry

Next, a federal court having proper jurisdiction typically engages in a two-step inquiry to determine whether to enforce a state court judgment. See, e.g., Wiederspan v. Republic of Cuba, 246 F.Supp.3d 873, 876-77 (S.D.N.Y. 2017); Weininger v. Castro, 462 F.Supp.2d 457, 471 (S.D.N.Y. 2006).

### *i.  First Step: Extent of Enforcement/Collateral Attack*

"First, pursuant to the full faith and credit doctrine, the court is obliged to enforce the judgment only to the extent that the courts of the rendering state would be similarly bound." Weininger, 462 F.Supp.2d at 471 (citation omitted). "Hence, if the state courts would

entertain a collateral attack on the judgment, so *may* the federal courts." McCloud v. Lawrence Gallery, Ltd., No. 90 Civ. 30(KMW), 1991 WL 136027, at *4 (S.D.N.Y. July 12, 1991) (emphasis added); see Weininger, 462 F.Supp.2d at 471 ("With regard to the first step in the inquiry, a federal court is required to examine the state court's res judicata law to determine whether a collateral attack would be permitted."). "However, this analysis is not entirely applicable . . . where no judgment debtor has made a collateral attack." Weininger, 462 F.Supp.2d at 472.

Defendant has failed to collaterally attack the South Carolina Judgment in this Court, despite having been properly served. See Summons Returned Executed at 1, DE #6. Defendant likewise failed to attack or challenge the South Carolina Judgment at the state-court level. For example, defendant could have "challenge[d] the state court judgment[], either directly, by appealing the judgment[], or collaterally, through a motion to vacate for lack of jurisdiction [or] a suit for declaratory relief[.]" Weininger, 462 F.Supp.2d at 472; see Yarbrough v. Collins, 293 S.C. 290, 292 (S.C. 1987) ("A judgment may be collaterally attacked if the court lacked jurisdiction and the lack of jurisdiction appears on the face of the record." (citation omitted)); S.C. R. Civ. P. 60. The Court is not aware of any such attempts by defendant. It is also important to note that the presiding South Carolina state court determined that defendant was properly served with process; defendant was also notified of that court's subsequent default judgment hearing. See South Carolina Judgment ¶ 2, DE #1-4 (plaintiff served Regent Tek via service on its president at her home address, and at its business address, for which plaintiff received a "green card receipt[,]" with an acknowledgment of service by Regent Tek's registered agent); id. ¶ 6 (four notices of the

default judgment hearing served on defendant).  Thus, defendant's "failure to collaterally attack the judgment[] works as a 'double default' and renders the first step of the court's full faith and credit inquiry, that of whether a collateral attack would be permissible under state court law, unnecessary."  Weininger, 462 F.Supp.2d at 472.

### ii. Second Step: Jurisdiction of the State Court

At the second stage of the enforcement inquiry, "before a court is bound by the judgment rendered in another State, it *may* inquire into the jurisdictional basis of the foreign court's decree. If that court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given."  McCloud, 1991 WL 136027, at *5 (emphasis added) (collecting cases).  This "second step arises from the recognition that these full faith and credit principles are subject to some basic limitations—[c]hief among these limitations is the caveat . . . that a judgment of a court in one State is conclusive upon the merits in a court in another State only if the court in the first State had power to pass on the merits—had jurisdiction, that is, to render the judgment."  Weininger, 462 F.Supp.2d at 471 (first alteration in original) (citation and quotation marks omitted).  The federal court, however, is not necessarily required to *sua sponte* analyze the rendering state court's jurisdiction.  See, e.g., id. at 474 ("The parties have not pointed to any authority *requiring* this Court to sua sponte engage in an analysis of the subject matter jurisdiction of the rendering court in the absence of a collateral attack by the party against whom the judgment is to be enforced or another party in interest such as the United States, and the Court declines to do so." (citations omitted)).

Here, after a hearing was held, the South Carolina state court issued a default judgment against defendant, which includes that court's findings of fact.  See generally South Carolina Judgment, DE #1-4.  Absent among these findings is whether the Court of Common Pleas determined that it had proper subject matter jurisdiction over the controversy, as well as personal jurisdiction over Regent Tek.  See id.  While the state court may have necessarily addressed these jurisdictional issues, this Court cannot definitively conclude as much based on the record before it.  However, since the issue has not been raised by defendant, this Court may properly decline to engage in a jurisdictional analysis.  See Weininger, 462 F.Supp.2d at 474; see also McCloud, 1991 WL 136027, at *12.  In any event, for the reasons explained below, the Court has satisfied itself that the state court had proper jurisdiction to hear the parties' underlying contractual dispute.

**State Court Subject Matter Jurisdiction:** The rendering state court in this case, the South Carolina Court of Common Pleas for the Ninth Judicial District, is a South Carolina "circuit court."  See Circuit Court, SOUTH CAROLINA JUDICIAL BRANCH (Nov. 18, 2022, 10:30 AM), https://www.sccourts.org/circuitcourt/.  Pursuant to the South Carolina Constitution, "circuit courts" are vested with "general jurisdiction in civil cases as follows: The Circuit Court shall be a general trial court with original jurisdiction in civil and criminal cases, except those cases in which exclusive jurisdiction shall be given to inferior courts, and shall have such appellate jurisdiction as provided by law."  Unisys Corp. v. S.C. Budget & Control Bd. Div. of Gen. Servs. Info. Tech. Mgmt. Office, 346 S.C. 158, 165 n.3 (S.C. 2001).  Thus, as a court of general jurisdiction, the Court of Common Pleas had subject matter jurisdiction to hear the plaintiff's claims for contract damages.  See Pinnacle Condo. Ass'n,

15

Inc. v. Drake Dev. Corp., No. 2010–UP–310, 2010 WL 10080049, at *3 (S.C. Ct. App. June 18, 2010) ("the circuit court has jurisdiction to determine contractual disputes" (citations omitted)); Capital City Ins. Co. v. BP Staff, Inc., 382 S.C. 92, 100 (S.C. Ct. App. 2009) (defining subject matter jurisdiction as the power to hear and determine cases of the general class to which the proceedings in question belong).

**State Court Personal Jurisdiction:** Under South Carolina law, "[t]he determination of whether a court may exercise personal jurisdiction over a nonresident involves a two-step analysis." S. Plastics Co. v. S. Commerce Bank, 310 S.C. 256, 259 (S.C. 1992). "First, the trial judge must determine that the South Carolina long-arm statute applies." Id. "Second, the trial judge must determine that the nonresident's contacts in South Carolina are sufficient to satisfy due process requirements." Id. (citation omitted). In relevant part, South Carolina's long-arm statute provides that a court "may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's . . . (1) transacting any business in this State . . . [or] (7) entry into a contract to be performed in whole or in part by either party in this State[.]" S.C. Code Ann. §§ 36–2–803(A)(1), (7) (1976). Regent Tek transacted business in South Carolina by purchasing chemical products that were manufactured and sold directly by Ingevity, a South Carolina company, and by entering into a contract with Ingevity for the same. See Compl. ¶¶ 3, 8; South Carolina Judgment ¶¶ 7-9, DE #1-4. Therefore, South Carolina's long-arm statute applied in the underlying action.

"Before personal jurisdiction may be exercised over a nonresident, due process requires that there exist minimum contacts between the defendant and the forum state such that the maintenance of the suit does not offend traditional notions of fair play and justice." Aviation

Assocs. & Consultants, Inc. v. Jet Time, Inc., 303 S.C. 502, 507 (S.C. 1991) (citation omitted).  A South Carolina court applies four factors in making this determination: "(1) the duration of the defendant's activity in [South Carolina]; (2) the character and circumstances of its acts; (3) the inconvenience to the parties; and (4) [South Carolina's] interest in exercising jurisdiction."  Id. at 508 (citation omitted).  Regent Tek conducted business in South Carolina by repeatedly ordering numerous products from a South Carolina business (i.e., Ingevity) on nine separate occasions, spanning from July 2019 until September 2019.  See Compl. ¶ 8; South Carolina Judgment ¶ 9, DE #1-4; see generally Purchase Orders, DE #1-1.  While South Carolina may not have been a convenient forum for defendant, plaintiff's headquarters is located within the state.  See Compl. ¶ 3.  Finally, South Carolina has an interest in exercising jurisdiction under the facts of this case.  See Colite Indus., Inc. v. G.W. Murphy Constr. Co., 297 S.C. 426, 429 (S.C. 1989) ("South Carolina has an interest in providing redress for its citizens when the parties contemplated the contract would be performed in whole or in part in this State." (citation omitted)).  Also, Regent Tek could have reasonably anticipated being haled into court in South Carolina given the contract's South Carolina choice-of-law provision. See id.  Under these circumstances, this Court concludes that due process requirements were met.  See, e.g., id. (concluding that the trial court had personal jurisdiction over an out-of-state defendant in a manufacturer's breach-of-contract case where the customer-defendant knew that the goods purchased would be made in South Carolina and had sufficient contacts to satisfy due process).

Having determined that the South Carolina Judgment satisfies the two-prong enforcement inquiry and is therefore entitled to full faith and credit, this Court respectfully

recommends that the South Carolina Judgment be enforced, in the amount ($369,244.38) set forth therein.

## VI.    Assessment of Damages in the Federal Action

Plaintiff further requests that it be awarded interest following the entry of the South Carolina Judgment in the state court September 7, 2021,[6] as well as those attorneys' fees and costs accrued in the instant federal action.  See Pl. Mot. ¶ 8.  The Court addresses each of these requests below.

### A.    Choice-of-Law Analysis

As an initial matter, the Court must first determine which law governs the determination of plaintiff's damages and attorneys' fees arising from the underlying contract dispute in this federal diversity action.  See D'Amato v. Five Star Reporting, Inc., 80 F.Supp.3d 395, 407 (E.D.N.Y. 2015).  The Second Circuit has held that "[a] federal court sitting in diversity applies the choice-of-law rules of the forum state[,]" which, here, is New York.  Maryland Cas. Co. v. Cont'l Cas. Co., 332 F.3d 145, 151 (2d Cir. 2003) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  "In a contract dispute, New York courts will generally honor a choice-of-law provision in an agreement." Scharnikow v. Siracuse, 15-CV-6991 (DRH) (SIL), 2016 WL 7480360, at *3 (E.D.N.Y. Dec. 6, 2016) (citation omitted), adopted, 2016 WL 7480364 (E.D.N.Y. Dec. 29, 2016).  "Absent fraud or violation of public policy, a court is to apply the law selected in the contract so long

---

[6] While plaintiff asserts that the South Carolina Judgment was entered on September 7, 2021 (and requests that post-judgment interest be calculated based on that date), see Pl. Mot. ¶ 8, the judgment itself is dated August 24, 2021, see South Carolina Judgment at 5, DE #1-4.  This Court makes the reasonable inference that the opinion of the state court judge entering a default judgment against defendant was issued on August 24, 2021, and the date of entry for that judgment is the September 7, 2021 date utilized by plaintiff.  The Court therefore uses the latter date to calculate plaintiff's award of interest.

as the state selected has sufficient contacts with the transaction." Cap Gemini Ernst & Young U.S. LLC v. Nackel, No. 02 CVI 6872(DLC), 2004 WL 569554, at *3 (S.D.N.Y. Mar. 23, 2004) (collecting cases).

Here, the parties' contract explicitly provides that each purchase order "will be governed by and construed in accordance with the laws of the State of South Carolina, without regard to its conflict of laws provisions." Terms and Conditions ¶ 13, DE #1-3. Moreover, the Court is not aware of any fraud or violation of public policy that would preclude it from honoring this contractual choice-of-law provision, and South Carolina has sufficient contacts with the transaction, as Ingevity is a South Carolina corporation that sold the goods that are the subject of the purchase orders. The Court therefore recommends that South Carolina law be applied to its determination of plaintiff's damages—i.e., interest and attorneys' fees—that were incurred as a result of defendant's breach of contract. See, e.g., Power Up Lending Grp., Ltd v. Danco Painting, LLC, 15-CV-4537 (JS) (SIL), 2016 WL 5362558, at *8 (E.D.N.Y. Aug. 10, 2016) (applying Virginia choice-of-law provision to determine attorneys' fees and prejudgment interest in breach-of-contract case), adopted, 2016 WL 5349784 (E.D.N.Y. Sept. 23, 2016); Paysafe Partners LP v. Merch. Payment Grp. LLC, 19 Civ. 495 (LGS), 2019 WL 1986607, at *4 (S.D.N.Y. May 6, 2019) (applying California choice-of-law provision to determine prejudgment interest in context of an action to confirm and enforce an arbitration award); cf. U.S. Bank Nat'l Ass'n v. Brooklyn Motor Cars, Inc., 18-cv-2609 (CBA) (PK), 2019 WL 1370696, at *5-8 (E.D.N.Y. Mar. 4, 2019) (applying Ohio choice-of-law provision in awarding prejudgment interest but applying the law of the forum state to award attorneys' fees; court reasoned that state law governing attorneys' fees is typically considered a

procedural issue, and New York choice-of-law rules dictate that New York follow its own procedural rules), adopted, 2019 WL 1367285 (E.D.N.Y. Mar. 26, 2019).

**B.    Interest**

Plaintiff demands an award of interest on the South Carolina Judgment, from the date of its entry in the state court on September 7, 2021 until entry of judgment in this federal case, at the post-judgment interest rate that is statutorily prescribed under South Carolina law—i.e., 7.25 percent per annum.  See Pl. Mot. ¶ 8; 9/12/22 Letter at 1, DE #14.

"The Second Circuit has expressly held that where, as here, the court's jurisdiction is premised on diversity, an award of pre-judgment interest is governed by state law[.]" Cappiello v. ICD Publ'ns, 868 F.Supp.2d 55, 59-60 (E.D.N.Y. 2012) (collecting cases), aff'd, 720 F.3d 109 (2d Cir. 2013).  In an enforcement action such as this, "post-judgment" interest in the underlying state court action is considered and treated as "prejudgment interest" for the purpose of determining damages in the federal action, and is therefore governed by (and calculated pursuant to) state law.  See, e.g., Madrigal v. Allstate Ins. Co., Case No. CV 14-4242 SS, 2016 WL 6694968, at *3-4 (C.D. Cal. May 19, 2016) (in an action to enforce a state court judgment, federal court applies state court's post-judgment interest rate to determine "prejudgment" interest in the federal action), aff'd sub nom. Madrigal v. Allstate Indem. Co., 697 F.App'x 905 (9th Cir. 2017).

As noted above, the parties' South Carolina choice-of-law provision governs the calculation of prejudgment interest in this case.  See Paysafe Partners, 2019 WL 1986607, at *4; see also Opulen Ventures, Inc. v. Axcessa, LLC, No. 12–CV–01776 (RRM)(RER), 2013 WL 829230, at *3-4 (E.D.N.Y. Jan. 22, 2013), adopted, 2013 WL 828922 (E.D.N.Y. Mar.

6, 2013). Pursuant to Section 34-31-20(B) of the South Carolina Code, any judgment entered by a South Carolina court "must draw interest according to law" at a rate "equal to the prime rate as listed in the first edition of the Wall Street Journal published for each calendar year for which the damages are awarded, plus four percentage points, compounded annually." S.C. Code Ann. § 34-31-20(B) (2020); see Edwards v. Campbell, 369 S.C. 572, 578 (S.C. 2006). The statute further provides that "[t]he South Carolina Supreme Court shall issue an order by January 15 of each year confirming the annual prime rate" and, accordingly, the South Carolina post-judgment interest rate for that given year. S.C. Code Ann. § 34-31-20(B).

For 2021 and 2022, the South Carolina Supreme Court issued two respective orders confirming the annual prime rate to be 3.25 percent; each order also provides that the post-judgment interest rate for these particular years is 7.25 percent per annum, compounded annually. See Interest Rate on Money Decrees & Judgments, 2021 S.C. LEXIS 9, at *1 (S.C. Jan. 4, 2021) ("[F]or the period January 15, 2021, through January 14, 2022, the legal rate of interest for judgments and money decrees is 7.25% compounded annually."); Interest Rate on Money Decrees & Judgments, 2022 S.C. LEXIS 4, at *1 (S.C. Jan. 6, 2022) ("[F]or the period January 15, 2022, through January 14, 2023, the legal rate of interest for money decrees and judgments is 7.25% compounded annually."); see also Pl. Mot., Exhibit A -- South Carolina judgment interest rates (docketed on July 8, 2022) at 2-3, DE #9-5. Nevertheless, in its motion papers, plaintiff does not explicitly request that this interest be compounded annually; in fact, plaintiff apparently calculated its previous estimations of the requested interest on a simple interest basis. See, e.g., 9/12/22 Letter at 1, DE #14.[7] This

---

[7] In its September 12, 2022 letter, plaintiff calculated the post-judgment interest that had accrued on the South Carolina Judgment from September 7, 2021 until September 12, 2022 by multiplying the amount of time that had

Court declines to recommend that plaintiff be awarded a greater amount of interest than the amount requested in the pending motion (and related submissions).  Accordingly, plaintiff should be awarded interest on the South Carolina Judgment ($369,244.38) at the annual rate of 7.25 percent (or $73.34 per day),[8] beginning from September 7, 2021 until the entry of judgment in the instant matter.

### C.    Attorneys' Fees

Plaintiff requests $9,720 in attorneys' fees related to litigating this federal action.[9]  See Pl. Mot. ¶ 8; 8/4/22 Rothman Decl. ¶ 6, DE #13.  In support of this request, plaintiff has provided two declarations of its counsel, Dennis M. Rothman, as well as contemporaneous time records.  See generally 7/8/22 Rothman Decl., DE #9-4; 8/4/22 Rothman Decl., DE #13; Time Entries, DE #13-1.

---

[8] elapsed (1.0137 years) by the annual amount of interest.  See 9/12/22 Letter at 1, DE #14.  The annual amount of interest was, in turn, determined by multiplying the yearly interest rate of 7.25 percent by the amount due under the South Carolina Judgment (.0725 x $369,244.38 = $26,770.22), which indicates that no compound interest calculation method was utilized by plaintiff.  See id.; cf. Abbas v. Hestia Tobacco, LLC, No. 18-CV-5151 (ENV) (RER), 2020 WL 9812912, at *5 n.9 (E.D.N.Y. Aug. 28, 2020) (utilizing the compound interest formula of P(1 + r/n)$^{nt}$, where P is the initial principal balance, r is the interest rate, n is the number of times the interest applied per time period, and t is the number of time periods that elapsed).

[8] The daily interest rate was calculated by applying the following simple interest method, which is commonly utilized in this District: first, multiplying the amount owed ($369,244.38) by the annual interest rate (7.25 percent) and then, dividing that sum by 365 days.  See Trs. of Bldg. Educ. Benefit Fund v. Tanachion Elec. Contracting, Inc., CV 17-5161 (DRH)(ARL), 2019 WL 4578959, at *3 (E.D.N.Y. July 1, 2019), adopted, 2019 WL 4575743 (E.D.N.Y. Sept. 20, 2019).

[9] Plaintiff's initial request for $9,090 in attorneys' fees, which purportedly reflected the time that plaintiff's counsel had spent litigating this federal action as of May 2022, see Pl. Mot. ¶ 8; 7/8/22 Rothman Decl. ¶ 10, DE #9-4, is internally inconsistent: in the same paragraph of his declaration, plaintiff's counsel represents that he spent 18.2 hours and 20.2 hours as of May 2022, see 7/8/22 Rothman Decl. ¶ 10, DE #9-4.  The Court ignores this scrivener's error and notes that Mr. Rothman's time entries as of May 2022 reflect a total of 18.2 hours.  See Time Entries at 4, DE #13-1.  Although plaintiff's counsel apparently based his initial request for $9,090 in attorneys' fees on the erroneous 20.2-hour figure ($450 hourly rate x 20.2 hours = $9,090), see 7/8/22 Rothman Decl. ¶ 10, DE #9-4, plaintiff has since submitted an updated attorneys' fees calculation requesting $9,720 for work performed by Mr. Rothman between May 31, 2022 and August 3, 2022; Mr. Rothman correctly calculated this fee amount based on 21.6 hours of work at a $450 hourly rate.  See 8/4/22 Rothman Decl. ¶¶ 3, 5-6, DE #13.

In diversity cases, a party's entitlement to a fee award and the amount of such fees are governed by state law.  See Am. Empire Surplus Lines Ins. Co. v. B & B Iron Works Corp., 18-cv-6384 (WFK) (ST), 2022 WL 4085732, at *6 (E.D.N.Y. Aug. 19, 2022) (quoting Grand Union Co. v. Cord Meyer Dev. Co., 761 F.2d 141, 147 (2d Cir. 1985)), adopted, 2022 WL 4079590 (E.D.N.Y. Sept. 6, 2022); see Opulen Ventures, 2013 WL 829230, at *4.  The Court therefore applies the law specified in the parties' contractual choice-of-law provision.  See Opulen Ventures, 2013 WL 829230, at *4; Power Up Lending Grp., 2016 WL 5362558, at *8.  "Under South Carolina law, '[a]ttorney's fees are not recoverable unless authorized by contract or statute.'"  Uhlig, LLC v. Shirley, 895 F.Supp.2d 707, 710 (D.S.C. 2012) (alteration in original) (quoting Jackson v. Speed, 326 S.C. 289, 307 (S.C. 1997)).  "Where the contract provides for 'reasonable' attorneys' fees without specifying a rate or amount, the issue of attorneys' fees is left to the discretion of the trial judge[.]"  Dedes v. Strickland, 307 S.C. 155, 160 (S.C. 1992); see, e.g., Baumann v. Long Cove Club Owners Ass'n, Inc., 380 S.C. 131, 139 (S.C. Ct. App. 2008) ("When a contract authorizes attorney's fees, the award of those fees is left to the discretion of the trial court and will not be disturbed unless an abuse of discretion is shown." (citation omitted)).

Here, the Terms and Conditions unambiguously provide that plaintiff may recover attorneys' fees incurred in collecting the amounts owed by the customer (Regent Tek) under the purchase orders; the contract does not specify a rate or amount of fees to be awarded.  See Terms and Conditions ¶ 6, DE #1-3 ("If any action is taken by Ingevity to collect any amount due hereunder, . . . Customer will pay all costs (including, without limitation, interest, court costs and attorneys' fees) incurred by Ingevity in collecting such amount.").  Thus, according

to the plain language of the contract, plaintiff is entitled to recover from defendant not only those attorneys' fees incurred in the state court action (which were awarded by the Court of Common Pleas, as set forth in the South Carolina Judgment), but also those attorneys' fees related to plaintiff's subsequent enforcement efforts in this Court.

Nevertheless, "[a] party who seeks attorney's fees has the burden to show that request is well-founded and failure to offer any evidence on the issue of attorney's fees precludes an award." Abbott v. Gore, 304 S.C. 116, 119-20 (S.C. Ct. App. 1991) (citing Gainey v. Gainey, 279 S.C. 68, 70 (S.C. 1983)). "In South Carolina, where a contractual obligation provides only that a party is to pay 'reasonable attorney's fees,'"—as opposed to "attorney's fees at a specific rate"—"the amount is unliquidated and, therefore, requires a finding on the reasonableness of the award." NationsBank v. Scott Farm, 320 S.C. 299, 305 (S.C. Ct. App. 1995). "In determining the reasonable time and hourly rate for attorneys' fees, the Court looks to the factors set forth in *Jackson v. Speed*, which include the nature, extent, and difficulty of the case; the time necessarily devoted to the case; the professional standing of counsel; the contingency of compensation; the beneficial results obtained; and the customary legal fees for similar services."[10] Maybank v. BB&T Corp., 416 S.C. 541, 581 (S.C. 2016) (citing Jackson, 326 S.C. at 308); see Horton v. Jasper Cnty. Sch. Dist., 423 S.C. 325, 330 (S.C. 2018). Importantly, no one factor is dispositive. See Horton, 423 S.C. at 330.

"Reasonable fees are generally calculated according to the prevailing market rates in the forum district." Opulen Ventures, 2013 WL 829230, at *4 (collecting cases and applying

---

[10] "[T]he contingency to be considered is whether the party on whose behalf the services were rendered will be able to pay the attorney's fee if an award is not made." Glasscock v. Glasscock, 304 S.C. 158, 161 (S.C. 1991). Plaintiff has presented no evidence with regard to this factor.

foreign state's law to determine attorneys' fees in a diversity action). "In this District, approved hourly rates for attorneys normally range from $200 to $450 for partners in law firms, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for paralegals." Dominic Schindler Holding, AG v. Moore, 20 Civ. 4407 (RPK) (VMS), 2022 WL 987428, at *8 (E.D.N.Y. Jan. 12, 2022) (collecting cases).

Plaintiff requests an hourly rate of $450 for Mr. Rothman, the sole attorney who performed work on this case. See 7/8/22 Rothman Decl. ¶¶ 7-8, DE #9-4. According to his declaration, Mr. Rothman graduated from St. John's Law School in 1977, is a former staff law clerk for the Second Circuit, and has been practicing law for approximately 43 years; he is a partner at the law firm Lester Schwab Katz & Dwyer, LLP and specializes in "business and commercial litigation." Id. ¶ 8; see Attorney Biography of Dennis M. Rothman, LSK&D NY LAW (Nov. 11, 2022, 9:45 PM), https://www.lskdnylaw.com/mobile/attorney.asp?key=139. While Mr. Rothman achieved a desirable outcome in this case, his hourly rate is nevertheless unreasonable, given the straightforward nature of plaintiff's default judgment submissions, which required primarily associate-level work.[11] Yet Mr. Rothman's contemporaneous time records reveal that all of the work performed in this case was billed at the requested $450 hourly rate. See Time Entries at 2-4, DE #13-1; 8/4/22 Rothman Decl. ¶ 5, DE #13. The Court therefore recommends that Mr. Rothman's hourly rate be decreased to $350 per hour, which is within the range of awards deemed reasonable in this District under similar

---

[11] See, e.g., Gesualdi v. Zano Indus., Inc., 21-CV-6097 (KAM)(RER), 2022 WL 4238267, at *8 (E.D.N.Y. Sept. 14, 2022) ("Considering that several tasks (calculating amounts, preparing exhibits, drafting motions with extensive precedent from [partner's] own practice alone) could have been completed by an attorney with less experience such that a reasonable paying client would not be willing to pay [partner's] regular rate, the Court finds that an hourly rate of $290 is reasonable for [partner who performed all attorney tasks.]"). Notably, plaintiff herein was not required to and did not submit a memorandum of law addressing the legal issues described herein.

circumstances.  See, e.g., Nimkoff v. Drabinsky, 17-cv-4458 (PKC), 2020 WL 3806146, at *9 (E.D.N.Y. June 9, 2020) (recommending $300 hourly rate for an attorney with more than 35 years' experience in a debt collection action that was "neither legally complex nor especially hard fought[,]" given the defendant's default), adopted, 2020 WL 3804458 (E.D.N.Y. July 7, 2020); LG Funding, LLC v. Fla. Tilt, Inc., No. 15-CV-631 (PKC)(VMS), 2015 WL 5038195, at *3-4 (E.D.N.Y. Aug. 26, 2015) (on a motion for default judgment for collection on a debt, court surveys cases in this District and awards managing partner with 5 years' experience a rate of $250 per hour); Friedman v. Sharinn & Lipshie, P.C., No. 12 CV 3452(FB)(CLP), 2013 WL 1873302, at *10 (E.D.N.Y. Mar. 28, 2013) (adjusting the hourly rate downward to $275 per hour for a named partner who practiced for over 30 years, noting that the requested $400 rate was "somewhat inflated" for a "relatively straightforward" default judgment, given the less intensive work required), adopted, 2013 WL 1869924 (E.D.N.Y. May 3, 2013).[12]

 With respect to the number of hours spent, plaintiff requests that attorneys' fees be awarded for a total of 21.6 hours of work performed in this case.  See 8/4/22 Rothman Decl. ¶¶ 3, 5, DE #13 (seeking fees for time spent on July 8, 2022 and August 3, 2022 for 2.0 and 1.4 hours, respectively, in addition to the 18.2 hours previously requested).  The Court has reviewed Mr. Rothman's contemporaneous time records (which confirm that he expended 21.6 hours in litigating this case), and concludes that the time expended was reasonable, and that none of the entries are excessive or duplicative.  In addition, the number of hours need not be reduced to account for Mr. Rothman's overbilling for associate-level work, as the

---

[12] To be sure, the latter two cases—LG Funding and Friedman—were issued in 2015 and 2012, respectively; however, when adjusted for inflation, the hourly rates awarded therein are in line with this Court's recommended hourly rate for Mr. Rothman.

recommended reduction in his hourly rate addresses this concern.  Accordingly, this Court recommends an award of $7,560 in attorneys' fees ($350 hourly rate x 21.6 hours).

**D.    Costs and Disbursements**

In calculating costs, federal courts sitting in diversity look to Rule 54(d)(1) of the FRCP, which provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1); see Baker v. Power Sec. Corp., 174 F.R.D. 292, 294 (W.D.N.Y. 1997) ("Except in rare circumstances in which some important state interest is implicated . . . , the awarding of costs in an action in federal court is controlled by federal law, specifically Rule 54 and 28 U.S.C. §§ 1821 and 1920." (citations omitted)).  "Filing fees and service of process fees are reimbursable as costs." Arch Specialty Ins. Co. v. M. Lopez Contracting Corp., 19-CV-07024 (EK) (PK), 2021 WL 7830147, at *6 (E.D.N.Y. Mar. 10, 2021) (citing, *inter alia*, 28 U.S.C. § 1920(1)).  Nevertheless, "[t]he fee applicant bears the burden of adequately documenting and itemizing the costs requested." Monge v. Glen Cove Mansion Hosp., LLC, No. 18-cv-7229 (SJF)(SIL), 2020 WL 1666460, at *9 (E.D.N.Y. Apr. 2, 2020) (quoting Volpe v. Nassau Cnty., No 12-CV-2416 (JFB)(AKT), 2016 WL 6238525, at *10 (E.D.N.Y. Oct. 24, 2016)).

In connection with this action, plaintiff requests $477 in costs and disbursements.  See Pl. Mot. ¶ 8.  The docket reflects that plaintiff paid a $402 filing fee, see DE #1, and such a fee is "recoverable without supporting documentation if verified by the docket." Feltzin v. Union Mall LLC, 393 F.Supp.3d 204, 219 (E.D.N.Y. 2019) (citations omitted).  Plaintiff's counsel represents that the remaining $75 represents costs incurred for service of process.  See

7/8/22 Rothman Decl. ¶ 12, DE #9-4.  However, plaintiff has neither itemized these service-of-process fees, nor has it provided supporting documentation.  "The Court . . . declines to recommend an award for costs that are neither documented nor identified."  Ally Fin. Inc. v. Comfort Auto Grp. NY LLC, 20-CV-1281 (MKB) (RLM), 2022 WL 3703955, at *24 (E.D.N.Y. Aug. 26, 2022), adopted, 2022 WL 4813505 (E.D.N.Y. Oct. 3, 2022).  Thus, plaintiff should be awarded only $402 in costs.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that plaintiff's state court judgment be enforced, and that judgment be entered against defendant on Count Three, in the amount of $369,244.38.  The Court further recommends that defendant be held liable for interest at a daily rate of $73.34 to be calculated from September 7, 2021 until the entry of judgment, $7,560 in attorneys' fees, and $402 in costs, and that Counts One and Two of plaintiff's Complaint be dismissed as moot.

Any objections to this Report and Recommendation must be filed with the Honorable Nicholas G. Garaufis on or before December 12, 2022.  Failure to file objections in a timely manner may waive a right to appeal the District Court's order.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

The Clerk is respectfully requested to docket this Report and Recommendation into the ECF court file and to send a copy to defendant at the following addresses:

> Regent Tek Industries, Inc.
> 202 Mastic Blvd. E.
> Shirley, New York 11967

Regent Tek Industries, Inc.
c/o Helen Torkos
P.O. Box 576
15 Thompson Road
Shelter Island, New York 11964

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**November 23, 2022**

/s/ ***Roanne L. Mann***
**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**